# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br>vs.<br><br>JACK LOBSINGER,<br><br>　　　　Defendant. | No. CR15-4024-MWB<br><br>**REPORT AND RECOMMENDATION** |

　　　　This case is before me on a motion (Doc. No. 23) by defendant Jack Lobsinger to dismiss the indictment. Plaintiff (the Government) has filed a resistance (Doc. No. 25). I conducted an evidentiary hearing on June 30, 2015. Defendant appeared personally and with his attorney, Assistant Federal Public Defender Brad Hansen. Assistant United States Attorney Tim Duax appeared for the Government. Lobsinger presented testimony from Jack Bjornstad and Kristi Kuester. The Government presented testimony from Monica Rehnstrom. Defendant's exhibits A through F, along with Government's exhibits 1 through 4, were received without objection. The motion has been referred to me for the preparation of a report and recommended disposition.

## I.　　PROCEDURAL BACKGROUND

　　　　On April 23, 2015, the grand jury returned an indictment (Doc. No. 1) charging Lobsinger with receipt of child pornography and possession of child pornography. He has entered pleas of not guilty to both charges and his trial is scheduled to begin August 3, 2015. On May 22, 2015, he filed a motion to dismiss the indictment on grounds that it is contrary to the terms of a plea agreement in a separate state court action. Specifically, he contends that on March 13, 2015, he entered into an agreement with the Clay County, Iowa, Attorney under which Lobsinger agreed to plead guilty to two counts of lascivious

acts with a child in exchange for a promise that he would face no federal child pornography charges. The Government contends that even if that promise was made, it is not binding on the Government because the state prosecutor had no authority to make it.

## II. FINDINGS OF FACT

Homeland Security Investigations (HSI) began investigating Lobsinger in February 2013. On April 17, 2013, a federal search warrant was issued for his residence in Spencer, Iowa, authorizing a search for evidence relating to child pornography. On April 24, 2013, agents from HSI and the Federal Bureau of Investigation (FBI), along with state and local law enforcement officers, executed the search warrant. A local law enforcement officer located Lobsinger's computer during the search and turned it over to the federal agents. A state police officer and agents from HSI and the FBI interviewed Lobsinger during the search. During that interview, Lobsinger allegedly admitted to both the possession of child pornography and the molestation of a child.

On March 21, 2014, the State of Iowa charged Lobsinger with one count of sexual abuse in the second degree, a Class B felony. If convicted on that charge, Lobsinger would face an indeterminate prison sentence not to exceed 25 years and would be required by Iowa law to serve at least seventy percent of that sentence (17.5 years). While no federal charges were filed at that time, HSI Special Agent John Voeltz and Assistant United States Attorney Mark Tremmel monitored the state court proceedings. Voeltz wrote updates to the case file while Tremmel had various communications with the Clay County Attorney's office.

Jack Bjornstad, Lobsinger's state court defense attorney, testified that from the very beginning of the state court case he had discussions with Mike Houchins, then the Clay County Attorney, about a plea agreement that would preclude the initiation of federal charges. According to Bjornstad, Houchins told him that the United States Attorney would not prosecute Lobsinger on federal child pornography charges if he

2

entered into a state court plea agreement that required him to serve some amount of prison time. Bjornstad testified that this was his understanding during the entire duration of his negotiations with Houchins. However, Bjornstad admitted that he had no contact with any representative of the federal government at any stage of the plea negotiations.

On February 2, 2015, Bjornstad wrote to Houchins and proposed that Lobsinger plead guilty to two counts of lascivious acts with a child, with the sentences on each count running concurrently. Ex. 1. After describing the proposal, Bjornstad wrote:

> Also, we understand that the feds would not pursue any child pornography charges. We want confirmation writing from the U.S. Attorney's office.

*Id*. The charge of lascivious acts with a child is a Class D felony under Iowa law and is punishable by an indeterminate term of imprisonment not to exceed five years. Kristi Kuester, who was an Assistant Clay County Attorney at the time and now serves as the County Attorney, testified that no mandatory minimum sentence would apply.

Houchins responded to the proposal with a letter dated February 18, 2015. Ex. 2. Houchins rejected the proposal but offered two alternatives: (1) Lobsinger could plead guilty to a Class C felony and receive a ten-year sentence or (2) he could plead guilty to two Class D felonies and serve the five-year sentences consecutively. *Id*. Houchins' letter made no reference to possible federal charges. *Id*.

At some point after sending his February 18 letter, Houchins prepared a written guilty plea (Plea Agreement) and forwarded it to Bjornstad for review. As drafted by Houchins, the Plea Agreement provided that Lobsinger would plead guilty to two counts of lascivious acts with a child (Class D felonies) with the sentences on each count running consecutively for a total sentence of ten years. Ex. A at 1-2. After receiving the proposed Plea Agreement, Bjornstad added the following handwritten notation on page 2:

> \* The state has agreed to and promised no federal child pornography or other charges.

3

*Id.* at 2. Bjornstad placed his own initials (JBB) in the left margin, next to his handwritten notation. *Id.* He then signed the Plea Agreement, as did Lobsinger. *Id.* at 4. The document was then sent to Houchins' office via email.

Unfortunately, these events occurred during a time when Houchins was suffering from an illness that would soon take his life. Kuester testified that Houchins was unable to work at his office after February 1, 2015, but instead worked from his home to the extent his health allowed. When the Plea Agreement was returned to his office via email, administrative assistant Monica Rehnstrom printed the document and called Houchins at his home to tell him that it had arrived. Rehnstrom testified that she noticed the handwritten change and read that change to Houchins over the telephone. Houchins then directed Rehnstrom to have Kuester sign and file the document. Rehnstrom took the Plea Agreement to Kuester and had her sign it. Kuester does not recall noticing the handwritten change and testified that she did not review the Plea Agreement carefully because Rehnstrom advised her that Houchins had approved it.

The Clay County Attorney's office electronically filed the Plea Agreement with the Clay County Clerk of Court on Friday, March 13, 2015. Four days later, Houchins filed a document entitled "Notice Regarding Written Guilty Plea." Ex. B. Rehnstrom testified that Houchins dictated the contents of the notice to her by telephone on Monday, March 16, or Tuesday, March 17. The notice states, in relevant part:

> 3. Originally, there was some discussion between the State and defense counsel regarding the federal charges. At that time, the undersigned informed defense counsel if the Defendant would plead to a B felony as originally charged, it was my understanding that the Federal government would not prosecute.
>
> 4. However, that is not the situation, and the State has not entered into an agreement to waive federal prosecution.

*Id.* Bjornstad filed a response to the notice the following day. Ex. C. The response did not expressly deny the statements made in paragraph 3 of Houchins' notice. Instead, Bjornstad stated: "The Guilty Plea was sent to the State for review of terms and

4

acceptance by signature and the State submitted the Guilty Plea to the Court for filing on March 13, 2015." *Id.*

On March 18, 2015, Voeltz updated Tremmel on the status of the state court case and provided him with a copy of the Plea Agreement. Tremmel then wrote a letter to Houchins, with a copy to Bjornstad, on March 31, 2015. Ex. D. Among other things, Tremmel wrote that in November 2014 he advised Houchins that the United States "likely would be willing to forego federal charges if defendant pled straight up to the pending charge of sexual abuse in the second degree, but that this would not be the case if defendant pled to a lesser charge." *Id.* at 1 [emphasis in original]. Tremmel also wrote: "As we discussed, any agreement not to file federal charges would need to be approved by a supervisor at the U.S. Attorney's Office." *Id.* Tremmel concluded the letter by stating that the United States Attorney's Office "has not made any agreement regarding the resolution of defendant's federal investigation" and "we have never taken the position that this defendant could avoid federal prosecution by reaching a plea agreement to lesser offenses in the state case." *Id.* at 2 [emphasis in original].

Kuester testified that she had only limited involvement with Lobsinger's case before the Plea Agreement was filed, as it was Houchins' case. However, she testified that she did participate in a meeting and/or telephone call early in the case that also included Tremmel. She testified that her understanding of Tremmel's position was that the Government would have been willing to forego federal charges only if Lobsinger plead guilty to the original, Class B felony. She explained that such a conviction would have resulted in a mandatory state court prison sentence longer than the sentence Lobsinger would likely receive in a federal prosecution.

Unfortunately, Houchins died on April 19, 2015. Kuester was named Clay County Attorney approximately one month later. In the meantime, the federal grand jury returned the indictment against Lobsinger in this case on April 23, 2015. Lobsinger filed his motion to dismiss the federal indictment on May 22, 2015. On June 10, 2015,

Bjornstad filed a motion to enforce the Plea Agreement in Lobsinger's state court action. Ex. 4.

Because Lobsinger is now in federal custody, the state court case remains unfinished. While the Plea Agreement includes his promise to plead guilty, Lobsinger has not yet appeared before a judge of the Iowa District Court for a plea colloquy. Nor has he been sentenced. Kuester testified that it is her position, as the Clay County Attorney, that the Plea Agreement has been rescinded and is no longer binding on the parties to the state court action.

### III. DISCUSSION

*A. Applicable Standards*

The Supreme Court considers plea bargaining "an essential component of the administration of justice." *United States v. Kettering*, 861 F.2d 675, 677 (11th Cir. 1988) (quoting *Santobello v. New York*, 404 U.S. 257, 260 (1971)). When a defendant relies "in any significant degree" on a promise from the prosecutor that induces such a bargain, it is in the interest of justice and the duties of the prosecution to ensure that such promises are fulfilled. *Santobello*, 404 U.S. at 262. Plea agreements are typically treated in accordance with general contract principles, and it is a violation of due process when the promises in the agreement are not fulfilled. *Margalli-Olvera v. INS*, 43 F.3d 345, 351 (8th Cir. 1994). However, "[t]he rule requiring compliance by the government with promises made during plea bargaining and analogous contexts generally requires that the agent be authorized to make the promise." *Margalli-Olvera*, 43 F.3d at 353 (quoting *Thomas v. INS,* 35 F.3d 1332, 1338 (9th Cir. 1994)).

State prosecutors are not authorized to bind federal prosecutors to promises or plea agreements without the federal prosecutors' knowledge and consent. *Hendrix v. Norris*, 81 F.3d 805, 807 (8th Cir. 1996). The Eighth Circuit Court of Appeals has explained:

> The sovereign not offering immunity has the undeniable right to protect the integrity of its law enforcement prerogatives by prosecuting anyone who

> allegedly has committed an offense against its peace and dignity. When its own evidence and investigation discloses acts of criminal activity, an undeniable right to prosecute exists. This right cannot be controlled, thwarted, or diminished by another sovereign granting immunity from prosecution of a kindred offense.

*United States v. First Western State Bank*, 491 F.2d 780, 783 (8th Cir.), *cert. denied*, 419 U.S. 825 (1974). Because the United States Attorneys are authorized by law to "prosecute for all offenses against the United States" within their respective districts, 28 U.S.C. § 547(1), they likewise have the power to enter into plea agreements incidental to prosecution. *Margalli-Olvera*, 43 F.3d at 353.

If the Government is not a party to a state plea agreement, then it can be bound by that agreement only if the state prosecutor was acting as agent for the United States Attorney. *Fourth St. Pharmacy v. United States Dep't of Justice, Drug Enforcement Admin.*, 836 F.2d 1137, 1139 (8th Cir. 1988); *see also Margalli-Olvera*, 43 F.3d at 353. To create an agency relationship, the state must have received actual authority from the federal government to act on its behalf. *Margalli-Olvera*, 43 F.3d at 353. Apparent authority is not sufficient, as the Government is not bound by doctrines such as equitable estoppel and apparent authority. *Id.*

Actual authority can be either express or implied. *Id.*; *see also* Restatement (Third) of Agency § 2.01 (2006). Whether express or implied, actual authority requires action by the principal. *Schaffart v. ONEOK, Inc.*, 686 F.3d 461, 471 (8th Cir. 2012). Express actual authority "means actual authority that a principal has stated in very specific or detailed language." *United States v. Gibson*, 4 F. Supp. 3d 1089, 1094 (S.D. Iowa 2014) (quoting Restatement (Third) Agency § 2.01 cmt. b (2013)). Implied actual authority is "incidental to a grant of express authority." *Margalli-Olvera*, 43 F.3d at 353. It is the authority to do "what is necessary, usual, and proper" to perform one's duties or "to act in a manner in which an agent believes the principal wishes the agent to act based on the agent's reasonable interpretation of the principal's manifestation." Restatement (Third) of Agency § 2.01 (2006). Implied actual authority must extend from

some express grant of authority, shown through a manifestation of assent from the principal to the agent. *Id.* A manifestation is conduct that expresses meaning, and the conduct must be directed to the agent itself. *Id.* at § 1.03. It can include words, actions or silence and is reflected by the context in which that manifestation is made. *Id.*

*B.  Analysis*

At the outset, I must determine whether the State of Iowa, through the Clay County Attorney, actually promised Lobsinger that no federal charges would be filed. If no such promise was made, then there is no reason to consider whether it is binding on the Government. Here, based on the evidence presented, I find that the promise was made, in writing, in the Plea Agreement. Ex. A. While Houchins prepared the first draft and did not include the promise, it is undisputed that Bjornstad amended the first draft by adding the words: "The state has agreed to and promised no federal child pornography or other charges." *Id.* It is also undisputed that Houchins was advised of the change by his administrative assistant, Rehnstrom, and nonetheless approved the Plea Agreement, as amended.[1] While Houchins later changed his position, and advised the Iowa District Court that "the state has not entered into an agreement to waive federal prosecution," Ex. B, the express language of the Plea Agreement, when combined with the surrounding circumstances, leaves little room for doubt that a meeting of the minds was reached, as between Lobsinger and the State of Iowa, on March 13, 2015. *See, e.g., United States v. Lua*, 990 F. Supp. 704, 710 (N.D. Iowa 1998) ("to create a valid contract, the parties

---

[1] The Government called Rehnstrom to testify after Lobsinger's presentation of evidence concluded. At that point, the record strongly suggested that Houchins, who was working from home because of his illness, did not know about Bjornstad's insertion when he authorized Kuester to sign the written guilty plea. Rehnstrom's testimony dispelled this notion and established that Houchins was made aware of the change. At the end of the hearing, defense counsel Brad Hansen made a point to commend prosecutor Tim Duax for putting Rehnstrom on the stand despite knowing that her testimony would be beneficial to Lobsinger's position. I join in Mr. Hansen's comments and also appreciate that fact that he highlighted Mr. Duax's professionalism.

8

must come to a 'meeting of the minds'") (quoting Restatement (Second) of Contracts § 17 comment c (1981)).

The fighting issue is whether the state prosecutor had the required, actual authority to bind the Government. Lobsinger concedes there is no evidence that the United States Attorney's Office granted Houchins *express* actual authority to agree that no federal charges would follow. He argues, however, that the circumstances require a finding that implied actual authority existed. First, he notes that federal agents worked closely with state and local law enforcement officers during the entire investigation. Second, he argues that Houchins must have reasonably believed that he had authority to make the promise or he would not have done so. Finally, he points to the fact that the Government monitored the state case but did not immediately bring federal charges against Lobsinger. He suggests this is proof of the Government's willingness to allow the state to resolve all charges against Lobsinger.

None of these factors come close to bridging the large evidentiary gap that precludes the Government from being bound by the State of Iowa's promise. First, for the Government to consent or commit to be bound by a state's agreement, there must be more than "mere participation of a federal agent in a state's investigation." *United States v. One Parcel of Real Estate Located at 25 Sandra Court, Sandwich, Illinois*, 135 F.3d 462, 464 (7th Cir. 1998); *see also Lua*, 990 F. Supp. at 713 (a joint state and federal investigation does not prove the delegation of authority). Collaborations between the authorities from sovereign governments are normal practices and are not enough to establish agency. *United States v. Cameron*, No. 02-60113-AA, 2006 WL 3491012, at *10 (D. Or. Nov. 30, 2006). Even a joint task force does not necessarily indicate an agency relationship, because the federal and state officers are working with each other, not for each other. *United States v. Hardin*, No. 3:05–CR–105–TAV–HBG, 2015 WL 1811135, at *7 (E.D Tenn. Apr. 21, 2015).

Here, the undisputed cooperation between federal, state and local authorities is not sufficient to establish agency. There is no evidence that in the course of such cooperation,

9

the Government granted any actual authority to the State of Iowa to resolve potential federal charges. Indeed, the only evidence concerning even a potential grant of authority is that the United States Attorney's Office advised the Clay County Attorney that it might consider waiving federal prosecution if Lobsinger plead guilty to the Class B felony charge, thus assuring a minimum prison term of more than 17 years. Kuester testified that this was her understanding based on her participation in discussions with Tremmel. This understanding is consistent with Houchins' March 17, 2015, notice and with Tremmel's March 31, 2015, letter.[2] Exs. B, D. The record does not support Lobsinger's effort to convert cooperation by federal and state authorities into a grant of authority by the Government.

Second, the fact that Houchins approved the Plea Agreement, as amended by Bjornstad, does not prove that he had implied actual authority to resolve any federal charges. As noted above implied actual authority is "incidental to a grant of express authority." *Margalli-Olvera*, 43 F.3d at 353. It must extend from some express grant of authority, shown through a manifestation of assent from the principal to the agent. Restatement (Third) of Agency § 2.01 (2006). In other words, there can be no implied actual authority without a grant of express authority. Again, there is no evidence of any grant of express authority from the Government to the Clay County Attorney concerning federal charges against Lobsinger. Even if the discussions between those parties led Houchins to believe that he had some level of authority, the evidence demonstrates that

---

[2] Bjornstad testified that it was his understanding throughout the plea negotiations that the United States would forego federal charges if Lobsinger plead guilty to any state charge that would require some prison time. I find that this testimony is entitled to no weight. Because Bjornstad had no contact with any representative of the federal government during plea negotiations, his alleged understanding could not have come from any words or actions of the United States Attorney's Office. Moreover, Bjornstad's letter of February 2, 2015, shows that he understood the need for written confirmation from the United States Attorney. Ex. 1. Nonetheless, he allowed his client to enter into the Plea Agreement without such confirmation. Even if Bjornstad actually had the understanding that he described during his testimony, the evidence contains no factual basis for that understanding.

10

the alleged authority was limited to the situation in which Lobsinger agreed to plead guilty to a Class B felony. There is no evidence of words or actions by the United States Attorney conveying implied actual authority to the Clay County Attorney to promise a waiver of federal charges if Lobsinger plead guilty to a lesser offense. Thus, even if Houchins actually believed that he had authority, there is no evidence supporting that belief.[3]

Finally, "the decision to prosecute rests solely at the discretion of the U.S. Attorney's Office." *United States v. Gibson*, 4 F. Supp. 3d 1089, 1093 (S.D. Iowa 2014). It is undisputed that the United States Attorney was willing to consider forgoing federal charges if Lobsinger plead guilty to a Class B felony in the state case. The fact that the Government monitored the state case and delayed its own prosecution does not prove that it granted any authority to the Clay County Attorney to resolve federal charges. Indeed, the United States Attorney's Office's actions after Lobsinger signed the Plea Agreement suggest exactly the opposite. Upon learning that Lobsinger would plead guilty to lesser charges, Tremmel authored his March 31, 2015, letter (Ex. D) and soon after obtained the indictment in this case. The evidence does not support Lobsinger's theory that the Government's delay in initiating federal prosecution proves the grant of any authority to the Clay County Attorney.

The Government was not a party to the Plea Agreement and there is no evidence that the Clay County Attorney had any authority to bind the United States Attorney. As such, I find that the Plea Agreement's promise of no federal charges is not binding on the Government. Obviously, this is a terribly unfortunate situation. I have no doubt that Lobsinger believed he would avoid federal charges by entering into the Plea Agreement. He presented evidence during the hearing about the difficult situation he now faces

---

[3] Houchins' actions after approving the Plea Agreement show that he quickly realized he did not have the authority to make any promises about federal charges. While it is not clear why he approved Bjornstad's handwritten term on March 13, 2015, he advised the state court of his mistake four days later. Ex. B.

because the Clay County Attorney had no power to promise that no federal charges would follow. That situation arose from bad lawyering in the state court case – especially on Bjornstad's part.[4] Any relief for Lobsinger must come from the Iowa District Court and/or the Clay County Attorney. The only question for this court is whether the Government is entitled to prosecute this case. It is.

## IV. CONCLUSION AND RECOMMENDATION

For the reasons set forth herein, I RESPECTFULLY RECOMMEND that the defendant's motion (Doc. No. 23) to dismiss be **denied**. Objections to this Report and Recommendation in accordance with 28 U.S.C. §636(b)(1) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to de novo review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

---

[4] Houchins certainly must share in some of the blame. As he later acknowledged, he should not have approved the Plea Agreement with Bjornstad's amendment. Ex. B. I am simply stunned, however, that Bjornstad allowed his client to enter into the agreement without obtaining confirmation from the United States Attorney that no federal charges would be filed – especially in light of Bjornstad's express acknowledgment, on February 2, 2015, that such confirmation was necessary. Ex. 1.

**IT IS SO ORDERED.**

**DATED** this 2nd day of July, 2015.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE