**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

UNITED STATES OF AMERICA,

          Plaintiff,

vs.

JACK LOBSINGER,

        Defendant.

No. CR15-4024-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
MAGISTRATE'S REPORT AND
RECOMMENDATION
CONCERNING DEFENDANT'S
MOTION TO DISMISS**

---

**TABLE OF CONTENTS**

I.    **INTRODUCTION AND BACKGROUND**.............................................. 2
    A.   *Procedural Background* ..................................................... 2
    B.   *Factual Background* ......................................................... 3

II.   **LEGAL ANALYSIS** ................................................................ 8
    A.   *Standard Of Review* ........................................................ 8
    B.   *Objections To Report And Recommendation* ............................. 13
        1.   *Factual objections* ......................................... 13
            a.   *Kuester's reading of the plea agreement* .................... 13
            b.   *Kuester's credibility*............................................. 14
            c.   *Bjornstad's understanding* ..................................... 18
        2.   *Legal objections* .......................................... 19
            a.   *Implied actual authority* ....................................... 19
            b.   *Specific performance of the plea agreement*................ 22

III.  **CONCLUSION** .................................................................... 23

# I.    INTRODUCTION AND BACKGROUND

## A.    Procedural Background

On April 23, 2015, an indictment was returned charging defendant Jack Lobsinger with receipt of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1) (Count 1) and possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2) (Count 2). Lobsinger subsequently filed a motion to dismiss in which he seeks dismissal of the indictment on ground that it is contrary to the terms of a plea agreement in an Iowa state court case. Specifically, Lobsinger contends that he entered into an agreement with the Clay County Attorney under which he agreed to plead guilty to two counts of lascivious acts with a child in exchange for a promise that he would face no federal child pornography charges. The prosecution filed a timely resistance to Lobsinger's motion. The prosecution argues that even if the Clay County Attorney made a promise to Lobsinger, it is not binding on the prosecution because the Clay County Attorney had no authority to make it.

Lobsinger's motion to dismiss was referred to United States Magistrate Judge Leonard T. Strand, pursuant to 28 U.S.C. § 636(b). Judge Strand conducted an evidentiary hearing and then filed a Report and Recommendation in which he recommends that Lobsinger's motion to dismiss be denied. In his Report and Recommendation, Judge Strand found that the State of Iowa, through the Clay County Attorney, promised Lobsinger in the plea agreement that no federal charges would be filed. However, Judge Strand next concluded that the prosecution was not a party to the plea agreement and there was no evidence that the Clay County Attorney had any authority to bind the United States Attorney. Thus, Judge Strand determined that the plea agreement's promise of no federal charges is not binding on the prosecution.

Lobsinger has filed objections to Judge Strand's Report and Recommendation. The prosecution has not filed a response to Lobsinger's objections. I, therefore, undertake the necessary review of Judge Strand's recommended disposition of Lobsinger's motion to dismiss.

## B. Factual Background

In his Report and Recommendation, Judge Strand made the following factual findings:

> Homeland Security Investigations (HSI) began investigating Lobsinger in February 2013. On April 17, 2013, a federal search warrant was issued for his residence in Spencer, Iowa, authorizing a search for evidence relating to child pornography. On April 24, 2013, agents from HSI and the Federal Bureau of Investigation (FBI), along with state and local law enforcement officers, executed the search warrant. A local law enforcement officer located Lobsinger's computer during the search and turned it over to the federal agents. A state police officer and agents from HSI and the FBI interviewed Lobsinger during the search. During that interview, Lobsinger allegedly admitted to both the possession of child pornography and the molestation of a child.
>
> On March 21, 2014, the State of Iowa charged Lobsinger with one count of sexual abuse in the second degree, a Class B felony. If convicted on that charge, Lobsinger would face an indeterminate prison sentence not to exceed 25 years and would be required by Iowa law to serve at least seventy percent of that sentence (17.5 years). While no federal charges were filed at that time, HSI Special Agent John Voeltz and Assistant United States Attorney Mark Tremmel monitored the state court proceedings. Voeltz wrote

updates to the case file while Tremmel had various communications with the Clay County Attorney's office.

Jack Bjornstad, Lobsinger's state court defense attorney, testified that from the very beginning of the state court case he had discussions with Mike Houchins, then the Clay County Attorney, about a plea agreement that would preclude the initiation of federal charges. According to Bjornstad, Houchins told him that the United States Attorney would not prosecute Lobsinger on federal child pornography charges if he entered into a state court plea agreement that required him to serve some amount of prison time. Bjornstad testified that this was his understanding during the entire duration of his negotiations with Houchins. However, Bjornstad admitted that he had no contact with any representative of the federal government at any stage of the plea negotiations.

On February 2, 2015, Bjornstad wrote to Houchins and proposed that Lobsinger plead guilty to two counts of lascivious acts with a child, with the sentences on each count running concurrently. Ex. 1. After describing the proposal, Bjornstad wrote:

> Also, we understand that the feds would not pursue any child pornography charges. We want confirmation writing from the U.S. Attorney's office.

*Id*. The charge of lascivious acts with a child is a Class D felony under Iowa law and is punishable by an indeterminate term of imprisonment not to exceed five years. Kristi Kuester, who was an Assistant Clay County Attorney at the time and now serves as the County Attorney, testified that no mandatory minimum sentence would apply.

Houchins responded to the proposal with a letter dated February 18, 2015. Ex. 2. Houchins rejected the proposal but offered two alternatives: (1) Lobsinger could plead guilty to a Class C felony and receive a ten-year sentence or (2) he

could plead guilty to two Class D felonies and serve the five-year sentences consecutively. *Id*. Houchins' letter made no reference to possible federal charges. *Id*.

At some point after sending his February 18 letter, Houchins prepared a written guilty plea (Plea Agreement) and forwarded it to Bjornstad for review. As drafted by Houchins, the Plea Agreement provided that Lobsinger would plead guilty to two counts of lascivious acts with a child (Class D felonies) with the sentences on each count running consecutively for a total sentence of ten years. Ex. A at 1–2. After receiving the proposed Plea Agreement, Bjornstad added the following handwritten notation on page 2:

> \*      The state has agreed to and promised no federal child pornography or other charges.

*Id*. at 2. Bjornstad placed his own initials (JBB) in the left margin, next to his handwritten notation. *Id*. He then signed the Plea Agreement, as did Lobsinger. *Id*. at 4. The document was then sent to Houchins' office via email.

Unfortunately, these events occurred during a time when Houchins was suffering from an illness that would soon take his life. Kuester testified that Houchins was unable to work at his office after February 1, 2015, but instead worked from his home to the extent his health allowed. When the Plea Agreement was returned to his office via email, administrative assistant Monica Rehnstrom printed the document and called Houchins at his home to tell him that it had arrived. Rehnstrom testified that she noticed the handwritten change and read that change to Houchins over the telephone. Houchins then directed Rehnstrom to have Kuester sign and file the document. Rehnstrom took the Plea Agreement to Kuester and had her sign it. Kuester does not recall noticing the handwritten change and testified that she did not review the Plea Agreement carefully because Rehnstrom advised her that Houchins had approved it.

5

The Clay County Attorney's office electronically filed the Plea Agreement with the Clay County Clerk of Court on Friday, March 13, 2015. Four days later, Houchins filed a document entitled "Notice Regarding Written Guilty Plea." Ex. B. Rehnstrom testified that Houchins dictated the contents of the notice to her by telephone on Monday, March 16, or Tuesday, March 17. The notice states, in relevant part:

> 3. Originally, there was some discussion between the State and defense counsel regarding the federal charges. At that time, the undersigned informed defense counsel if the Defendant would plead to a B felony as originally charged, it was my understanding that the Federal government would not prosecute.

> 4. However, that is not the situation, and the State has not entered into an agreement to waive federal prosecution.

*Id*. Bjornstad filed a response to the notice the following day. Ex. C. The response did not expressly deny the statements made in paragraph 3 of Houchins' notice. Instead, Bjornstad stated: "The Guilty Plea was sent to the State for review of terms and acceptance by signature and the State submitted the Guilty Plea to the Court for filing on March 13, 2015." *Id*.

On March 18, 2015, Voeltz updated Tremmel on the status of the state court case and provided him with a copy of the Plea Agreement. Tremmel then wrote a letter to Houchins, with a copy to Bjornstad, on March 31, 2015. Ex. D. Among other things, Tremmel wrote that in November 2014 he advised Houchins that the United States "likely would be willing to forego federal charges if defendant pled straight up to the pending charge of sexual abuse in the second degree, but that this would not be the case if defendant pled to a lesser charge." *Id*. at 1 [emphasis in original]. Tremmel also wrote: "As we discussed, any agreement not to file federal charges

6

would need to be approved by a supervisor at the U.S. Attorney's Office." *Id*. Tremmel concluded the letter by stating that the United States Attorney's Office "has not made any agreement regarding the resolution of defendant's federal investigation" and "we have never taken the position that this defendant could avoid federal prosecution by reaching a plea agreement to lesser offenses in the state case." *Id*. at 2 [emphasis in original].

Kuester testified that she had only limited involvement with Lobsinger's case before the Plea Agreement was filed, as it was Houchins' case. However, she testified that she did participate in a meeting and/or telephone call early in the case that also included Tremmel. She testified that her understanding of Tremmel's position was that the Government would have been willing to forego federal charges only if Lobsinger plead guilty to the original, Class B felony. She explained that such a conviction would have resulted in a mandatory state court prison sentence longer than the sentence Lobsinger would likely receive in a federal prosecution.

Unfortunately, Houchins died on April 19, 2015. Kuester was named Clay County Attorney approximately one month later. In the meantime, the federal grand jury returned the indictment against Lobsinger in this case on April 23, 2015. Lobsinger filed his motion to dismiss the federal indictment on May 22, 2015. On June 10, 2015, Bjornstad filed a motion to enforce the Plea Agreement in Lobsinger's state court action. Ex. 4.

Because Lobsinger is now in federal custody, the state court case remains unfinished. While the Plea Agreement includes his promise to plead guilty, Lobsinger has not yet appeared before a judge of the Iowa District Court for a plea colloquy. Nor has he been sentenced. Kuester testified that it is her position, as the Clay County Attorney, that the Plea

Agreement has been rescinded and is no longer binding on the
parties to the state court action.

Report and Recommendation at 2-6.

## II.    LEGAL ANALYSIS

### A.    Standard Of Review

I review the magistrate judge's report and recommendation pursuant to the
statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a *de novo* determination of
> those portions of the report or specified proposed findings or
> recommendations to which objection is made. A judge of the
> court may accept, reject, or modify, in whole or in part, the
> findings or recommendations made by the magistrate judge.
> The judge may also receive further evidence or recommit the
> matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see* FED. R. CIV. P. 72(b) (stating identical requirements); N.D.
IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but
not articulating any standards to review the magistrate judge's report and
recommendation). While examining these statutory standards, the United States Supreme
Court explained:

> Any party that desires plenary consideration by the Article III
> judge of any issue need only ask. Moreover, while the statute
> does not require the judge to review an issue *de novo* if no
> objections are filed, it does not preclude further review by the
> district judge, sua sponte or at the request of a party, under a
> *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court may review de novo
any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party
files an objection to the magistrate judge's report and recommendation, however, the

district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

*De novo* review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen de novo review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting de novo review is "distinct from any form of deferential review"). The *de novo* review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, reprinted in 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))). Thus, while *de novo* review generally entails review of an entire matter, in the context of § 636 a district court's required de novo review is limited to "*de novo* determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any *issue* need only ask." (emphasis added)). Consequently, the Eighth Circuit Court of Appeals has indicated *de novo* review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger de novo review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result,

the Eighth Circuit Court of Appeals has been willing to "liberally construe[]" otherwise general pro se objections to require a *de novo* review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and to conclude that general objections require "full de novo review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a de novo review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require de novo review, it is clear to me that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate."). Therefore, I will strive to provide de novo review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give de novo review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting de novo review with "clearly erroneous standard" of review, and recognizing *de novo* review was required because objections were filed). I am unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report

and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Med. Clinic, P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than de novo is not "positively require[d]" by statute, Thomas, 474 U.S. at 150, Eighth Circuit precedent leads me to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* FED. R. CIV. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, I believe one further caveat is necessary: a district court always remains free to render its own decision under de novo review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a

clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and I may choose to apply a less deferential standard.[1]

---

[1]The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous or plain error standard to review factual findings, depending on whether the appellant originally objected to the magistrate judge's report and recommendation. *See United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain error standard of review is different than a clearly erroneous standard of review, *see United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the plain error standard appears to be discretionary, as the failure to file objections technically waives the appellant's right to appeal factual findings, *see Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will not result in a waiver of the right to appeal '"when the questions involved are questions of law or mixed questions of law and fact."'" (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed de novo, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g., United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir. 2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions *de novo*." (citation omitted)).

As noted above, Lobsinger has filed objections to Judge Strand's Report and Recommendation. I, therefore, undertake the necessary review of Judge Strand's recommended disposition of Lobsinger's motion to dismiss.

### B. Objections To Report And Recommendation

#### 1. Factual objections

##### a. Kuester's reading of the plea agreement

Lobsinger first objects to Judge Strand's finding that Kristi Kuester, the current Clay County Attorney and an assistant Clay County Attorney at the time Lobsinger signed the plea agreement, "did not review the Plea Agreement carefully." Report and Recommendation at 4. Lobsinger points out that at the evidentiary hearing, Kuester testified as follows on direct examination:

> Q.    Before you signed [the plea agreement,] you did read it; right?
>
> A.    I don't think that I did.

Hearing Tr. at 43. In addition, Lobsinger points to the following testimony of Kuester on cross-examination:

> Q.    Prior to signing and filing this agreement, did you see the handwritten language that Mr. [Jack] Bjornstad had inserted on page 2?
>
> A.    I don't believe so.

Hearing Tr. at 50.

Kuester's testimony clearly indicates that she does not believe that she read the plea agreement before signing and filing it. Accordingly, because there is no basis in

this record to find that Kuester read the plea agreement before signing and filing it, Lobsinger's objection is sustained.

### b.  *Kuester's credibility*

Lobsinger's next objection again concerns the testimony of Kuester.  In the Report and Recommendation, Judge Strand made the following finding:

> Kuester testified that she had only limited involvement with Lobsinger's case before the Plea Agreement was filed, as it was Houchins' case. However, she testified that she did participate in a meeting and/or telephone call early in the case that also included Tremmel. She testified that her understanding of Tremmel's position was that the Government would have been willing to forego federal charges only if Lobsinger plead guilty to the original, Class B felony.  She explained that such a conviction would have resulted in a mandatory state court prison sentence longer than the sentence Lobsinger would likely receive in a federal prosecution.

Report and Recommendation at 5.   This finding apparently is based on the following testimony from Kuester:

> Q.    Before Mr. Houchins' recent death, what was your role in Mr. Lobsigner's case?
>
> A.    Pretty minimal. I had met with Mike and -- well, it went back to about 2010 when an investigation first started with him.  I handled juvenile court for Clay County, so through juvenile court we had child abuse assessments involving Mr. Lobsigner and the victim in the criminal case and so I had met with the Spencer police officers and DHS officers at that time regarding his investigation.
>
> Q.    At any point, did you meet with federal law enforcement officers?
>
> A.    I met with John Voeltz at some point.

Q.     Approximately when?

A.     I know there was a meeting before we had any charges on Mr. Lobsigner and then I think there was maybe one more meeting either in person or by phone since we had the charges filed or right around the time that we were filing the charges. I don't know time frames exactly.

Q.     And these meetings were with Agent Voeltz?

A.     Correct.

Q.     Anybody else involved?

A.     Mike Houchins was there. I think Mark Tremmel was there also and -- and the officer from the Spencer Police Department.

Q.     And was Mr. Tremmel involved in all of these meetings regarding Mr. Lobsigner in your office?

A.     I remember more so talking to him on the phone. I don't remember specifically if he was at the meeting that -- that we had in person in Spencer with – with the Agent Voeltz.

Q.     Do you remember any conversations between yourself or Mr. Houchins and Mr. Tremmel?

A.     Do I recall conversations between myself and Mr. Tremmel?

Q.     Right; the substance of the conversation.

A.     Right around the time that we were filing charges on Mr. Lobsigner, which would have been in March of 2014, I remember Mike Houchins and I had talked to Mark Tremmel and I think Agent Voeltz also at the same time and discussed sort of a game plan that -- that if Mr. Lobsigner pled to the charges that we were charging -- the B felony sexual abuse in the second degree--that the --there would be no federal indictment.

Hearing Tr. at 39-40.[2]

Lobsinger objects to giving weight to Kuester's testimony on this issue and argues that the following four circumstances weigh against crediting Kuester's testimony: (1) the lack of evidence or testimony corroborating Kuester's account; (2) her signing and filing the plea agreement in which she averred that the statements in it were "true and correct"; (3) Kuester's incentive to undermine the plea agreement in light of her office's decision to revoke the plea agreement in its entirety because the "offer was too good and . . . didn't do justice for the victim, " Hearing Tr. at 46; and (4) her testimony is not corroborated by Exhibit B, Houchins's March 17, 2015, notice filing.

Although I must conduct my own *de novo* review of the record, Judge Strand's assessment of Kuester's credibility is entitled to some weight and deference, since he had the opportunity to observe her demeanor. There can be no doubt that seeing a witness testify live assists the finder of fact in evaluating the witness's credibility. As Judge Learned Hand explained:

> [T]he carriage, behavior, bearing, manner and appearance of a witness—in short, his "demeanor"—is a part of the evidence. The words used are by no means all that we rely on in making up our minds about the truth of a question that arises in our ordinary affairs, and it is abundantly settled that a jury is as little confined to them as we are. They may, and indeed they should, take into consideration the whole nexus of sense impressions which they get from a witness. This we have again and again declared, and have rested our affirmance of findings of fact of a judge, or of a jury, on the hypothesis that this part of the evidence may have turned the scale. Moreover, such evidence may satisfy the tribunal, not only that the witness' testimony is not true, but that the truth is the opposite of his story; for the denial of one, who has a motive

---

[2]Lobsinger's name is frequently spelled as "Lobsiger" in the hearing transcript.

> to deny, may be uttered with such hesitation, discomfort, arrogance or defiance, as to give assurance that he is fabricating, and that, if he is, there is no alternative but to assume the truth of what he denies.

*Dyer v. MacDougall*, 201 F.2d 265, 268–69 (2d Cir. 1952) (footnote omitted). Similarly, in *Anderson v. City of Bessemer*, 470 U.S. 564 (1985), the United States Supreme Court recognized that: "[O]nly the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Id*. at 575. Judge Strand was able to see Kuester's physical reactions to questions, to assess her demeanor, and to hear the tone of her voice—matters that cannot be gleaned from a written transcript. *See id.; see also United States v. $63,530.00 in U.S. Currency*, 781 Fed/ App'x 949, 957 (8th Cir. 2015) (quoting *Anderson*, 470 U.S. at 575); *Ms. S. ex rel G. v. Vashon island Sch. Dist.*, 337 F.3d 1115, 1127 (9th Cir. 2003) ("'Live testimony enables the finder of fact to see the witness's physical reactions to questions, to assess the witness's demeanor, and to hear the tone of the witness's voice-matters that cannot be gleaned from a written transcript.'") (quoting *United States v. Mejia*, 69 F.3d 315, 315 (9th Cir. 1985)); *United States v. Zeigler*, 994 F.2d 845, 849 (D.C. Cir. 1993) (observing that unlike other forms of evidence, "[d]emeanor evidence is not captured by the transcript; when the witness steps down, it is gone forever."); *United States v. Hood*, 493 F.2d 677, 680 (9th Cir. 1974) (trial judge in unique position to observe witnesses demeanor while appellate court only has "the cold record, which is sterile in comparison"); *In re Case Nova of Lansing, Inc.*, 146 B.R. 370, 377 (Bankr. W.D. Mich. 1992) (stating that "the trial court, viewing the demeanor, body language, tone, and reactions of the live witnesses, is in a better position to evaluate credibility than an appellate court having only the benefit of a written transcript

I do not find the four circumstances identified by Lobsinger, either individually or collectively, sufficient to undermine Kuester's testimony on this issue. In fact,

Houchins's March 17, 2015, notice filing actually supports Kuester's testimony more than it contradicts it. In that notice, Houchins states, in relevant part:

> 3. Originally, there was some discussion between the State and defense counsel regarding the federal charges. At that time, the undersigned informed defense counsel if the Defendant would plead to a B felony as originally charged, it was my understanding that the Federal government would not prosecute.

Ex. B at ¶ 3. Houchins's statement is consistent with that portion of Kuester's testimony concerning the terms of a plea agreement that would likely satisfy the United States Attorney and result in that office not filing child pornography charges against Lobsinger. After a thorough review of both the hearing transcript and the evidence, I conclude that Kuester's testimony was credible. Accordingly, Judge Strand's determination regarding Kuester's credibility is upheld and Lobsinger's objection is denied.

### c.   *Bjornstad's understanding*

Lobsinger further objects to Judge Strand's finding that Bjornstad's testimony, "that it was his understanding throughout the plea negotiations that the United States Attorney would forego federal charges if Lobsinger plead guilty to any state charge that would require some prison time," was "entitled to no weight" "[b]ecause Bjornstad had no contact with any representative of the federal government during plea negotiations, his alleged understanding could not have come from any words or actions of the United States Attorney's Office." Report and Recommendation at 10 n.2.

Bjornstad testified that he never contacted the United States Attorney's Office to secure a promise that it would forgo federal charges if Lobsinger pleaded guilty to certain state charges. Moreover, Bjornstad testified that he had never spoke to any Assistant United States Attorney or federal agent regarding Lobsinger. He also admitted that the federal government was not a party to the plea agreement and that the plea agreement

was never signed by any federal agent. Indeed, the document has no place for a federal government agent to sign. From my review of both the hearing transcript and the evidence, there is no evidence in the record that Bjornstad's understanding, regarding the terms under which the United States Attorney was willing to forego bringing federal charges against Lobsinger, came from any action of the United States Attorney's Office. Accordingly, Lobsinger's objection is denied.

### 2. *Legal objections*
#### a. *Implied actual authority*

Lobsinger objects to Judge Strand's conclusion the Clay County Attorney's Office lacked implied actual authority to bind the United States Attorney to the promise that he would not face federal charges. In support of his objection, Lobsinger points out that federal and Iowa state prosecutors and law enforcement cooperated in their investigations of Lobsinger. Lobsinger also notes that the United States Attorney did not bring child pornography charges against Lobsinger for nearly two years after the execution of a federal search warrant and more than one year after Lobsinger was charged with sexual abuse in state court. He argues that the federal government's silence constituted a manifestation of implied actual authority to the Clay County Attorney's Office.

Generally speaking, the determination as to whether there has been a breach of a plea agreements is governed by the law of contracts. *See Puckett v. United States*, 556 U.S. 129, 137 (2009); *Margalli–Olvera v. INS*, 43 F.3d 345, 351 (8th Cir. 1994). Over a half-century ago, the United States Supreme Court warned that: "[A]nyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947). It is black letter law in this Federal Circuit, as well as others, that "'state prosecutors cannot bind federal prosecutors without the latter's consent and knowledge.'" *Hendrix v. Norris*, 81 F.3d

805, 807 (8th Cir. 1996) (quoting *United States v. Fuzer*, 18 F.3d 517, 520 (7th Cir. 1994)); *see United States v. Sells*, 477 F.3d 1226, 1235 (10th Cir. 2007) ("The federal government may become a party to state proceedings if it has knowledge of those proceedings and consents to the representations made by state prosecutors."); *Montoya v. Johnson*. 226 F.3d 399, 406 (10th Cir. 2000) (quoting *Hendrix*, 81 F.3d at 807); *see also United States v. Cordova–Perez*, 65 F.3d 1552, 1554 (9th Cir. 1995) ("[I]t is well settled that states cannot bind the federal government to the terms of a plea agreement to which the federal government is not a party."); *United States v. Roberson*, 872 F.2d 597, 611 (5th Cir. 1989) (holding that state immunity agreement did not bind federal prosecutor); *Fourth Street Pharmacy v. United States Dep't of Justice*, 836 F.2d 1137, 1139 (8th Cir. 1988) ("[N]either plea agreements negotiated by state prosecutors to which the federal government is not a party, nor subjective expectations of the parties regarding future federal action prevent federal agencies from independently enforcing compliance with federal law."); *United States v. Barker*, 542 F.2d 479, 482 (8th Cir. 1976) ("The United States as a sovereign is not precluded from enforcing its laws by the grant of immunity of another sovereign, in this case the state.");

In *Barker*, the Eighth Circuit Court of Appeals explained the legal rationale undergirding this principle:

> It is clear beyond doubt that one sovereign's grant of immunity is not ipso facto binding on another sovereign. As we stated in *United States v. First Western State Bank*, 491 F.2d 780, 783 (8th Cir.), *cert. denied*, 419 U.S. 825, 95 S. Ct. 42, 42 L.Ed.2d 49 (1974):
>
> > The sovereign not offering immunity has the undeniable right to protect the integrity of its law enforcement prerogatives by prosecuting anyone who allegedly has committed an offense against its peace and dignity. When its own evidence and investigation

> discloses acts of criminal activity, an undeniable right
> to prosecute exists. This right cannot be controlled,
> thwarted, or diminished by another sovereign granting
> immunity from prosecution of a kindred offense.
>
> Missouri officials could not and did not give Barker immunity
> from federal prosecution.

*Barker*, 542 F.2d at 482–83. The Fifth Circuit Court of Appeals expressed similar sentiments in *Roberson*:

> We conclude that the instant agreement fails the Rowe
> test with respect to the federal prosecution, simply because no
> "agreement was made" with federal prosecutors or regarding
> federal prosecution. If state agreements that immunize
> criminal defendants from state charges could bind federal
> prosecutors, state prosecutors would be able to usurp federal
> prosecutorial discretion.
>
> Nor did the state prosecutor in this case have any
> authority to bind the federal prosecutor. Under settled
> precedent, one federal prosecutor cannot bind his or her
> counterpart in another district unless he or she has been given
> the authority. *See United States v. D'Apice*, 664 F.2d 75, 78
> (5th Cir. Unit B Dec. 1981). If federal prosecutors cannot
> bind other federal prosecutors with their unauthorized acts, a
> state prosecutor a fortiori should not be able to do so.

*Roberson*, 872 F.2d at 611

In this instance, Lobsinger, who has the burden of production, has failed to prove that the United States Attorney was a party to his plea agreement with the Clay County Attorney's Office. The letter from Bjornstad to Houchins on February 2, 2014, relating the details of a proposed plea agreement, clearly demonstrates that Bjornstad did not believe Houchins had authority to bind the United States Attorney. Why else would Bjornstad demand in that letter: "We want confirmation writing from the U.S. Attorney's office." Bjornstad Letter at 1, Government's Ex. 1 at 1. In his reply letter, it is perfectly

clear that Houchins was speaking only for the Clay County Attorney's Office and not the federal government. There is absolutely no mention of the federal government in that letter. Similarly, in the text of plea agreement which followed, as drafted by Houchins, again makes no mention of the federal government or the disposition of possible federal charges.

Lobsinger points to the fact that federal and Iowa state prosecutors and law enforcement cooperated in their investigations as supporting his theory of implied actual authority. The flaw in Lobsinger's argument is that he has failed to demonstrate that any federal officer or agent gave express authority to the Clay County Attorney's Office to negotiate a plea agreement with Lobsinger on behalf of the United States Attorney. Neither testimony nor documentary evidence was offered that such a delegation of authority occurred during the investigation. Implied actual authority is "incidental to a grant of express authority." *Margalli–Olvera*, 43 F.3d at 353. It is the authority to do "what is necessary, usual, and proper" to perform one's duties or "to act in a manner in which an agent believes the principal wishes the agent to act based on the agent's reasonable interpretation of the principal's manifestation." RESTATEMENT (THIRD) OF AGENCY § 2.01 (2006). Because implied actual authority must extend from some express grant of authority and no one in the Clay County Attorney's office had actual authority to act for the United States Attorney, it follows that no one from that office had any implied actual authority to bind the United States Attorney. Accordingly, Lobsinger's objection is denied.

### b. *Specific performance of the plea agreement*

Finally, Lobsinger objects to Judge Strand's failure to recommend dismissal of the federal charges as the appropriate remedy. Judge Strand did not reach the issue of the appropriate remedy because he found that the plea agreement was not binding on the

United States Attorney. Because I agree with Judge Strand's conclusion, Lobsinger's objection is denied as moot.

### III. CONCLUSION

Therefore, for the reasons discussed above, I, upon a *de novo* review of the record, accept Judge Strand's report and Recommendation and deny defendant Lobsinger's motion to dismiss.

**IT IS SO ORDERED**.

**DATED** this 5th day of August, 2015.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA